# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3925 | **DATE** | 10/21/2004 |
| **CASE TITLE** | Johnson vs. Montgomery Place | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendant's motion for summary judgment is granted in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 2 2 2004 date docketed | |
| ✓ | Docketing to mail notices. *Memorandum Distributed to open court* | | | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | OCT 2 2 2004 date mailed notice | |
| MW | courtroom deputy's initials | 2004 OCT 21 PM... U.S. DISTRICT... Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILLIP JOHNSON, )
)
    Plaintiff, )
)
v. ) No. 03 C 3925
)
)
MONTGOMERY PLACE, )
)
    Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Montgomery Place's ("Montgomery") motion for summary judgment. For the reasons stated below, we grant Montgomery's motion for summary judgment in its entirety.

## BACKGROUND

Montgomery is a retirement community that is located in Hyde Park, Illinois. Plaintiff Phillip Johnson ("Johnson") began working for Montgomery as the Chief Financial Officer in November of 2000. Johnson's job responsibilities as the Chief Executive Officer included preparing financial reports, reconciliation, billing,

1

accounts payable, accounts receivable, payroll, human resources and communicating with Montgomery's two largest creditors. Johnson claims that in May of 2002, Jackie Pettis ("Pettis"), Human Resources Manager for Montgomery, complained to him that Michael Apa ("Apa"), the Executive Director at Montgomery, had sexually harassed her. Johnson claims that he reported the complaint to Apa and Apa directed Johnson to begin an internal investigation concerning Pettis' allegations. Johnson claims that William Fairbanks ("Fairbanks"), Chairman of the Board of Directors for Montgomery, reported statements made by Johnson to Apa, but did so in such a way as to alter the meaning of Johnson's statement and indicate that Johnson held animosity against Apa. Johnson claims that Apa then incorrectly believed that Johnson had told the board that there was no need for Apa's position and Apa believed that Johnson told Pettis that Apa planned on firing her after her probationary period. Johnson also contends that Apa believed that Johnson was taking Pettis' side in the harassment dispute and Apa replaced Johnson with an independent attorney who was assigned to investigate Pettis' allegations.

Johnson claims that because of his involvement in the Pettis investigation, Apa held a grudge against him and in retaliation on June 19, 2002, Apa allegedly issued Johnson an unfounded disciplinary warning. Johnson claims that even after the independent investigator began looking into Pettis' allegations, Pettis told

Johnson that Apa was continuing to harrass her. Johnson also claims that at that time, Jennifer Price ("Price'), another employee at Montgomery, also complained to him about alleged sexual harrassment by Apa. Johnson claims that he informed Fairbanks about the allegations made by Price against Apa. Johnson also claims that during the Pettis investigaion three other employees came forth with allegations of harrassment by Apa.

According to Johnson, the harassment allegations lodged against Apa created a tension among the employees that negatively affected Montgomery's day to day operations. On June 20, 2002, Johnson spoke with Catherine Onifrey ("Onifrey"), a Bank of Scotland representative that monitored the bank's interest in Montgomery. Johnson claims that he told Onifrey that morale was low at Montgomery because of the Pettis sexual harassment allegations and investigation. On July 12, 2002, Montgomery terminated Johnson's employment. Montgomery indicated that the termination was based on Johnson's divulgence of the sexual harassment allegations and investigations and the fact that operations were being affected by the controversy. Montgomery also indicated that Johnson's termination was due to a disciplinary warning issued in June of 2002. Johnson filed a four count complaint which includes a Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et.seq.*, retaliation claim (Count I), an Illinois Wage Payment and Collection

Act, ("IWPCA") 820 ILCS 115/1 *et.seq.*, claim (Count II), an Illinois Attorneys Fees in Wage Payment Act, ("IAFWP") 705 ILCS 225/1, claim (Count III), and a state law retaliatory discharge claim (Count IV).

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case."*Id.* at 325. Once the movant has met this burden, the nonmoving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Col., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the nonmoving party, and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Title VII Retaliation Claim (Count I)

Johnson claims that Montgomery retaliated against him in violation of Title VII. In order to defeat a motion for summary judgment on a Title VII retaliation claim a plaintiff may proceed under the direct method of proof or the indirect method of proof. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).

#### A. Direct Evidence Method

Johnson argues that he has sufficient evidence to proceed under the direct

5

method of proof. In order to defeat a summary judgment motion on a Title VII retaliation claim under the direct method of proof a plaintiff must establish: "(1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two." *Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004). Under the direct method a plaintiff must either point to: 1) direct evidence which generally must be "an outright admission by the decision maker that the challenged action was undertaken because of" the plaintiff's protected activity, or 2) circumstantial evidence that forms a "convincing mosiac" that shows the discriminatory intent by the decision maker. *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)(stating that under the direct method a plaintiff can produce evidence of a "'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision maker.") (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994)); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003)(stating that if using circumstantial evidence under the direct method the plaintiff must point to "circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision maker.'")(quoting *Troupe*, 20 F.3d 734, 737 (7th Cir.1994));*Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003)(stating that under the direct method a "plaintiff must provide direct or circumstantial evidence that the*decision maker* has acted for a prohibited reason.").

In order to proceed under the direct method with circumstantial evidence the

plaintiff must use circumstantial evidence that "point[s] directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003)). We note that although there remains viable Seventh Circuit case law indicating that under certain circumstances circumstantial evidence may suffice under the direct method of proof, the Seventh Circuit has also recently indicated that pursuant to *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002) "inferences and circumstantial evidence cannot be used to establish a prima facie case for retaliation under the direct evidence test." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004). However, we need not address the issue of whether or not Johnson can present circumstantial evidence under the direct evidence method because, even if Johnson could present circumstantial evidence, there is not sufficient evidence to support his contentions.

Johnson's argument concerning the direct method of proof is mainly based upon six pieces of evidence. Johnson does not contend that he has direct evidence of discriminatory intent. Instead Johnson relies solely on circumstantial evidence. Johnson claims that: 1) he was performing his job in a satisfactory manner, 2) Pettis filed charges with the EEOC against Apa, 3) Johnson was asked to investigate the Pettis allegations and Johnson discovered allegations of harassment by other employees, 4) Fairbanks distorted Johnson's statement to the board so that Apa thought that Johnson held animosity against Apa, 5) after Apa believed that Johnson

7

had animosity against Johnson, Apa removed Johnson from the Pettis investigation and issued an unfounded disciplinary warning to Johnson, and 6) Johnson was terminated for making a routine report which was similar to other reports he has previously submitted at Montgomery. Johnson argues that because of the suspicious timing of the above listed events, a trier of fact could infer that Montgomery terminated Johnson's employment because of an unlawful discriminatory intent held by a decision maker. We disagree that the above mentioned allegations are sufficient to form a convincing mosaic that points directly to an unlawful discriminatory intent by a decision-maker at Montgomery. Neither has Johnson provided sufficient evidence of causation to defeat a summary judgment motion.

In addition, we note that although the evidence concerning Apa is not sufficient to proceed under the direct method of proof, the evidence that concerns Apa may not be pertinent because he was not a decision-maker since it was the board of directors that terminated Johnson's employment. The Seventh Circuit has stated that in the Title VII context "[a] decision maker is the person 'responsible for the contested decision.'" *Rogers*, 320 F.3d at 754. Johnson points to a part of Apa's deposition as convincing evidence that Apa controlled the termination of Johnson. (Apa's Dep. Tr., p.94, lines 8-16). However, the referenced testimony only concerns Apa informing the board of Johnson's initial write-up and does not address Apa's influence over the decision to terminate Johnson. Thus, there is insufficient evidence that Apa was a decision maker and thus Apa's alleged discriminatory

8

animus is also immaterial under the direct method of proof. Therefore, we find that Johnson has not presented sufficient evidence to proceed under the direct method of proof.

### B. Indirect Method

Johnson also argues that he can proceed under the indirect method of proof. In order to proceed under the indirect method of proof a plaintiff must first establish a *prima facie* case. *Haywood*, 323 F.3d at 531. A plaintiff can establish a *prima facie* case under the indirect method by showing that: 1) he engaged in protected activity, 2) his job performance met the legitimate expectations of his employer, 3) his employer took a materially adverse employment action against him, and 4) he was treated less favorably than similarly situated employees that did not engage in the protected activity. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)(citing *Stone v. City of Indianapolis Pub. Utils. Div. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). If a plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to produce a legitimate non-discriminatory reason, and if one is produced, the burden shifts back to the plaintiff to show that the given reason is a pretext for discrimination. *Id.*

Johnson disagrees with Montgomery's assessment that he was not following the rules and/or his performance was unsatisfactory, warranting a written warning.

9

However, Montgomery also cited that Johnson was discharged for his telephone conversation with Montgomery's lender. (D. Mem. 1-2). Johnson admits, pursuant to Local Rule 56.1, that one of the reasons he was discharged was because of his disclosure of the allegations to Onifrey. ( SAF 50). Although Johnson argues that he was never told not to discuss such issues, he has not provided sufficient evidence to show that part of his responsibilities as a Financial Officer for Montgomery included disclosing harassment allegations within the organization to an outside lender. Johnson signed a form acknowledging that "Montgomery 'polices or business methods are not discussed with unauthorized persons either inside or outside the scope of your work responsibilities'." (RSF 5 & 6). Johnson admits that he did not check with anyone before disclosing the harassment allegations to Onifrey. (RSF 13). He also admits that he did not recall checking accounting standards before disclosing the EEOC allegations to Montgomery's lender. (RSF 13). Johnson's only argument left is that he was never told directly to not discuss non-financial issues with the lender. (Ans. 2) Johnson fails to provide any evidence that the conversation at issue was within the scope of his protected activity. Therefore, he has failed to show a genuine issue of material fact relating to this aspect of his claim of retaliation.

In addition, Johnson himself cites *Hilt-Dyson v. City of Chicago*, 282 F.3d

456 (7th Cir. 2002) and acknowledges in his own brief that as the plaintiff he "must demonstrate that. . . he was treated less favorably than similarly situated employees who did not engage in protected activity." (Ans. 5). However, Johnson has inexplicably failed to even attempt to point to a similarly situated employee that was treated more favorably than Johnson that did not engage in protected activity. Johnson cites two cases from the Fifth Circuit and one case from the Tenth Circuit in an attempt that he can somehow circumvent the "similarly situated employee" requirement. However, such case law is not controlling precedent in this district. Johnson's only argument is that he performed his job "in a highly professional manner" and that "[i]t is safe to say that other employees at Montgomery Place who received top evaluation [sic], salary increases and bonuses were not terminated for performance issues." (Ans. 8). Such speculation is insufficient to defeat a summary judgment motion. Johnson is required to point to similarly situated employees and, in order to show that the employees are similarly situated, Johnson must show that the employees are "directly comparable in all material respects." *Hudson*, 375 F.3d at 561(quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). The Seventh Circuit has also stated that "[t]o determine whether two employees are directly comparable, a court looks at all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were

subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications--provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Johnson's general reference to employees that "received top evaluation [sic], salary increases and bonuses" does not in any way explain how such employees in that abstract group at Montgomery would be comparable in all material respects such as salary, job position, supervisors, type of work, and other aspects of their work. *See also Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003)(holding that it is the plaintiff's "duty to prove" that the defendant employer treated similarly situated employees more favorably and that a plaintiff cannot relieve herself of that duty by contending that there were no similarly situated employees); *Rogers*, 320 F.3d at 755(finding against the plaintiff officer because although the plaintiff provided evidence of different treatment among the employees the plaintiff did "not cite evidence demonstrating that any of the other officers within the [plaintiff's district] were directly comparable to her in all material respects."). Thus, Johnson has failed to point to sufficient evidence that indicates that he was treated less favorably than similarly situated employees who did not engage in protected activity.

Also, even if Johnson were able to establish a *prima facie* case, Montgomery

has provided legitimate non-discriminatory reasons for its actions taken against Johnson and Johnson has not pointed to sufficient evidence that indicates that Montgomery's action were a pretext for unlawful discrimination. *See Ajayi*, 336 F.3d at 532(stating that"courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions."). Therefore, we grant Montgomery's motion for summary judgment on the Title VII retaliation claim (Count I).

## II. Illinois Wage Payment and Collection Act Claim (Count II)

Montgomery argues that it did not violate the IWPCA because Johnson did not earn a bonus for 2001 to 2002 under the terms of his employment and compensation agreements and thus Johnson had not earned a bonus at the time of his termination. Under the IWPCA, "every employer shall pay the final compensation of separated employees in full. . . ." 820 ILCS 115/5. The act further defines "final compensation" as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employmnt contract or agreement between the 2 parties." 820 ILCS 115/2

Johnson alleges in his complaint that he was entitled to a bonus for his work

13

in 2001 to 2002 because Johnson "performed his duties in a manner that was expected of him." (Compl. par. 16). However, Johnson admits pursuant to Local Rule 56.1 that in March 28, 2001, Montgomery issued a memo setting forth four criteria that needed to be met before bonuses would be paid to the senior executives in 2001 to 2002. ( R SF 8). Johnson also admits pursuant to Local Rule 56.1 that "[n]o bonus was paid to the senior staff for 2001-2002." ( R SF 19). Johnson has failed to provide sufficient evidence that would allow a reasonable trier of fact to conclude that all the conditions on the bonus pool program were met. Thus, Johnson has not provided sufficient competent evidence indicating that he was entitled to a bonus. Therefore, we grant Montgomery's motion for summary judgment on the IWPCA claim (Count II).

III. Illinois Attorneys Fees in Wage Payment Act Claim (Count III)

In Count III Johnson argues that he is entitled to attorney's fees if it is shown that Montgomery withheld final compensation. The IAFAP states the following:

> § 1. Whenever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs

of the action.

705 ILCS 225/1. Johnson's IAFAP claim is thus dependant upon the merits of that IWPCA claim. As we indicated above, we grant summary judgment on the IWPCA claim. Therefore, Montgomery's motion for summary judgment on the IAFWP claim (Count III) is granted.

## IV. Retaliatory Discharge Claim (Count IV)

Johnson argues that he was simply complying with his professional responsibilities as a financial officer when he discussed the allegations of sexual harassment with Onifrey. For a retaliatory discharge claim under Illinois law a plaintiff must establish: "(1) that she had been discharged; (2) that her discharge was in retaliation for her activities; and (3) that her discharge violated a clearly mandated public policy of the state of Illinois." *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003)(citing *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 911 (Ill. 1988)); *see also Thomas v. Guardsmark, Inc*, 381 F.3d 701, 707-08 (7th Cir. 2004)(stating that for a retaliatory discharge claim under Illinois law a plaintiff must allege "that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy.")(citing *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 880 (Ill.

1994)).

Johnson has not supplied competent evidence that his non-financial disclosures to an outside lender were within his professional responsibilities at Montgomery. Also, Johnson has not provided sufficient evidence for a reasonable trier of fact to find that he was discharged in retaliation for his activities involving the Pettis investigation. In addition, Johnson claims that the discharge violates the public policy encouraging entities to report truthful information to lenders and refers to recent "scandals" where that has been an issue. However, Johnson was not reporting to Onifrey the truth concerning any improper financial accounting by Montgomery or any other financial improprieties that would bring such a public policy into play. Therefore, we grant summary judgment on retaliatory discharge claim (Count IV).

## CONCLUSION

Based on the foregoing analysis, Montgomery's motion for summary judgment is granted in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 21, 2004